```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION
```

STEVEN CURTIS KLEIN,

                Plaintiff,

vs.                                    Case No.   2:02-cv-492-FtM-29DNF

GREGORY VENZ, ROBERT BRIODY, ROBERT
VAUGHN, MICHAEL LIPSCOMB, ADAM
DEMING,

                Defendants.
_____

## OPINION AND ORDER

### I. Status

This matter comes before the Court upon Defendant Venz' Motion to Dismiss Plaintiff's Complaint (Doc. #44) filed September 24, 2004 ("Venz Motion") and Defendants Vaughn, Lipscomb and Deming's Motion to Dismiss, or In the Alternative, Motion for Summary Judgment (Doc. #46) filed October 29, 2004 (hereinafter the "Liberty Defendants' Motion"). Attached to the Liberty Defendants' Motion are nine exhibits, including the Affidavit of Michael Lipscomb, Ph.D., Clinical Director of the Florida Civil Commitment Center ("FCCC") (Doc. #46.1-#46.9). The Liberty Defendants' Motion refers to matters outside the four corners of Plaintiff's Second Amended Complaint. As such, it will be converted into a motion for summary judgment. Somerville v. Hall, 2 F. 3d 1563, 1564 (11th Cir. 1993). Plaintiff twice was advised of the provisions of Fed. R. Civ. P. 56 and given an opportunity to respond to Defendant Venz' and the Liberty Defendants' Motions. See Docs. #23 and #49

filed June 1, 2004 and August 3, 2005, respectively. As of the date of this Order, Plaintiff filed a Response to Defendant Venz' Motion only (Doc. #45). This matter is now ripe for review.

Plaintiff is a civilly committed resident confined at the Florida Civil Commitment Center ("FCCC") as a sexually violent predator pursuant to Fla. Statute §394.910 et seq., Florida Statutes (the "Jimmy Ryce Act"). Plaintiff initiated this action by filing a motion for a temporary restraining order (Doc. #1) on October 10, 2002. The Court deferred Plaintiff's Motion and ordered Plaintiff to file a civil rights complaint (Doc. #4), which Plaintiff did on October 30, 2002 (Doc. #6). On July 30, 2003 and March 3, 2004, Plaintiff filed an Amended Complaint (Doc. #18) and a Second Amended Complaint (Doc. #22) with leave of Court.

Plaintiff's Second Amended Complaint alleges Fifth Amendment and Due Process violations stemming from the FCCC's policy requiring Plaintiff to submit to history and maintenance polygraphs and penile plethysmograph ("PPG") assessments as part of Plaintiff's treatment program at the FCCC. In particular, Plaintiff claims that the polygraph testing and PPG assessments subject him to "self-incrimination," "illegal coercion of testimony" and "punitive action." Second Amended Complaint, page 8, Section VI. Plaintiff names as Defendants: Gregory Venz, the Director of DCF's Sexually Violent Program; Robert Briody, an employee of Liberty Behavioral Healthcare, Inc. ("Liberty") and Executive Director of the FCCC; Robert Vaughn, an employee of

-2-

Liberty and Associate Director of the FCCC; Dr. Michael Lipscomb, an employee of Liberty and Clinical Director of the FCCC; and Adam Deming, an employee of Liberty and Plaintiff's team leader at the FCCC. Plaintiff seeks injunctive relief to prohibit Defendants' use of polygraph testing and PPG assessments at the FCCC, and further seeks to prohibit Defendants from taking any punitive action against Plaintiff due to his refusal to submit to polygraph testing and PPG assessments.

Defendant Venz in his Motion to Dismiss argues that Plaintiff cannot obtain the injunctive relief he seeks from Venz since Plaintiff names Venz as a Defendant in his individual capacity only. Venz Motion (Doc. #44), Page 3. Additionally, Defendant Venz argues that the Second Amended Complaint fails to allege a causal connection between the alleged constitutional deprivations and any action by Defendant Venz. Id. Page 4. Furthermore, Defendant Venz maintains that the Second Amended Complaint fails to state a claim because neither the administration of a history polygraph or PPG assessment violate Plaintiff's constitutional rights. Id. Page 6. Finally, Defendant Venz argues that he is entitled to statutory immunity pursuant to §394.923, Fla. Stat. (2003) from any civil liability for good faith conduct. Id. Page 11.

Plaintiff, in his Response to Venz' Motion, disputes that he names Venz in his individual capacity only. To the contrary, Plaintiff points out that he did not specify in what capacity he

named Venz as a Defendant, but argues from a review of the Second Amended Complaint it is clear that Venz, as well as all Defendants, "are sued in their professional capacities." Response (Doc. #45), Pages 2-3.  Further, Plaintiff claims that Defendant Venz' position as the Director of DCF's Sexual Violent Program makes him "*directly responsible* for the operation and oversight of the FCCC." Id. Page 4 (Emphasis in original).

The Liberty Defendants contend that they are entitled to judgment as matter of law because the undisputed facts demonstrate that neither the requirement that Plaintiff submit to a history polygraph or PPG assessments violate Plaintiff's Fifth Amendment or Due Process rights.

## II. Standard of Review

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law. Id.  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine

issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial motion. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003).

### III. Undisputed Facts and Conclusions of Law

By way of background, the State of Florida enacted the Involuntary Civil Commitment of Sexually Violent Predators' Treatment and Care Act (hereinafter "Jimmy Ryce Act" or "Act"), §§394.910-.913, Fla. Stat., by which a person determined to be a sexually violent predator[1] is required to be housed in a secure

---

[1]   A "sexually violent predator" is defined by the Act as any person who:

　　(a) has been convicted of a sexually violent offense; and

　　(b) suffers from a mental abnormality or personality disorder that
(continued...)

facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." §394.917(2). Subsequent to commitment, persons classified under the Act are periodically examined, at least annually, and a determination is to made whether a committed person may be released safely. §394.918. Additionally, persons committed under the Act have the right to petition for release. §394.918(2).  The state bears the burden of proving by clear and convincing evidence that the person's mental condition requires continued confinement. §394.918(4).  The Jimmy Ryce Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So. 2d 93, 112 (Fla. 2002).  Admittedly, "a person committed under [the Act] could be held in a secure facility for the remainder of that person's life." Williams v. State, 889 So. 2d 804, 806 (Fla. 2004).

Plaintiff Klein was found to be a sexually violent predator after his Jimmy Ryce trial on March 1, 2001 (Case no. 05-1999-CF-008148) and was committed to the custody of the Florida Department of Children and Families ("DCF") for treatment at the FCCC.  DCF has entered into a contract with Liberty Behavioral healthcare,

---

[1](...continued)
    makes the person more likely to engage in acts of sexual violence if
    not confined in a secure facility for log-term control, care, and
    treatment.

Section 394.912(10), Fla. Stat. (2002).

Inc. ("Liberty"), a private for profit corporation, to provide clinical, administrative and internal security staff and services at the FCCC.

The mission of the FCCC is "to deliver state of the art sex offender-specific treatment and control in a secure environment." Liberty Defendants' Motion, Exhibit 2, FCCC Treatment Program Overview, page 2.1. The FCCC's sex offender treatment program implemented by Liberty "adheres to the *Ethical Standard and Principles for the Management of Sexual Abusers* established by the Association for the Treatment of Sexual Abusers "ATSA)." Id. Page 5.1. The goal of the treatment program is:

> to habilitate sexual offenders and instill cognitive awareness and self-management skills they need to control their sexually deviant behavior and criminal offending so that they can be safely returned to the community-with an ideals of zero victimization in the future.

Id. Page 2.1. Treatment in the FCCC treatment program is consensual, and is not mandatory. Id. Page 6.3. Residents who consent to participate in the treatment program are required to "cooperate in a comprehensive assessment of their individual needs and participate in individualized [sexual offender specific] treatment programming." Id. Page 6.3(1).

As part of the individualized treatment program, residents are required to develop a sexual autobiography which details a resident's entire sexual offense history. Liberty Defendants' Motion, Exhibit 3, Lipscomb Affidavit, ¶3. In order to verify the

accuracy and completeness of a resident's sexual autobiography, the resident is required to submit to a history polygraph. Id. ¶4. Prior to submitting to the history polygraph the resident is required to compete a victim questionnaire for each victim. The resident is not required to use the victim's actual name, but may use an alias name. Id. ¶5. A history polygraph "is useful in developing treatment and supervision plans." Liberty Defendants' Motion, Exhibit 8, Practice Standards and Guidelines for members of the Association for the treatment of Sexual Abusers, Appendix B, Polygraphy (2001), page 48.

In February 2002, Plaintiff was advised by Defendant Deming that as part of his treatment he is required to submit to a history polygraph, which requires Plaintiff to acknowledge "each of his sexual offenses, regardless of whether the offense resulted in a criminal charge or conviction." Second Amended Complaint, ¶4. Additionally, Plaintiff is required to submit to maintenance polygraphs during the course of his treatment which requires Plaintiff to acknowledge any deviant sexual acts, crimes, or fantasies which occurred while at the FCCC. Id. ¶9. Plaintiff is not afforded any type of immunity from prosecution for any uncharged crimes that may be revealed during the polygraph examinations. Id. ¶5, 9. The FCCC is unaware of any person who has submitted to the history polygraph being subjected to criminal prosecution based on a disclosure made in the treatment program. Liberty Defendants' Motion, Exhibit 3, Lipscomb Affidavit, ¶6.

In December 2002, Plaintiff was advised by Defendants Lipscomb and Deming that the FCCC would incorporate an arousal management component known as penile plethysmograph ("PPG") assessments into its treatment program.  Id. ¶ 10.  The PPG is used "as a tool for guiding the focus of treatment, and in measuring changes in sexual arousal patterns."  Liberty's Motion, Policy #F-22, Exhibit 6. FCCC policy mandates that

> PPG assessments will be used to clarify diagnosis and to make recommendations concerning the focus of treatment. Results of the PPG assessment, when used in conjunction with other data, may also be used to predict a resident's risk for sexual re-offense.  Because deviant arousal is recognized as only one part of a comprehensive psychosexual evaluation, FCCC will not use PPG results as the sole basis for termination or completion of a resident's treatment.

Liberty Defendants' Motion, Exhibit 6, FCCC Policy # F-22, Clinical Services, Phallometric Assessment, page 2.

On October 28, 2003, Plaintiff was required to submit to history polygraph testing.  Plaintiff's Second Amended Complaint, page 11, ¶13.  Plaintiff refused to submit to the polygraph.  Two days later, Plaintiff was advised by Mr. Deming that Plaintiff would be subjected to punishment for failing to take the polygraph. Plaintiff was then terminated from his vocational job, removed from core therapy, and reduced from treatment level 3.2 to 3.1. Plaintiff was further advised that he was not permitted to progress in treatment until he agreed to submit to a history polygraph. Id., page 12, ¶14.

On May 5, 2004 the Circuit Court, after an evidentiary hearing, ordered that Plaintiff "shall not be released until he completes further treatment." State of Florida v. Steven Curtis Klein, Case No. 05-1999-CF-008148, Eighteenth Judicial Circuit, in and for Brevard County, Florida Order on Mental Health Evaluation, May 5, 2004, attached as Exhibit 5 to Liberty Defendants' Motion. The Court stated that "issues still remain on History, Arousal treatment and plan upon release to provide a reasonable barrier against the factors which may cause [Plaintiff] to offend." Id. Nonetheless, the trial court "noted that [Plaintiff] is near the point where he could be released and not likely to engage in acts of sexual violence." Id.

## IV. Applicable Law

The Fifth Amendment Self-incrimination Clause, which applies to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." Malloy v. Hogan, 378 U.S. 1 (1964). This prohibition is not limited to criminal trials but also "privileges [a person] not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77 (1973). In order for the privilege to attach the person must be "*compelled* to

give self-incriminating testimony." United States v. Washington, 431 U.S. 181, 188 (1977) (emphasis added).

In McKune v. Lile, 536 U.S. 24 (2002) the Supreme Court considered the constitutionality of a mandatory Kansas Sexual Abuse Treatment Program ("SATP") that required the plaintiff, Lile, to admit guilt for the offense for which they were committed. Additionally the SATP required participants to complete a sexual history and submit to a polygraph assessment to confirm the participant's truthfulness. Lile refused to participate in the SATP asserting his Fifth Amendment right against self-incrimination. As a result, Lile was transferred from a medium security prison to a maximum security prison. Additionally, Lile's privilege status was reduced from a Level III to Level I, which resulted in certain privileges being revoked including, curtailment of visitation, loss of prison employment, and access to television.

The McKune Court found "[s]ex offenders are serious threats in this Nation." 536 U.S. at 32. Ample studies prove that sex offenders have a higher recidivism rate than any other type of offender. Id. (citing to U.S. Dept. Of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 1983, p. 6 (1997)). Clinical rehabilitation programs can enable an offender to "manage their impulses" to reduce recidivism. McKune v. Lile, 536 U.S. at 33 (citing U.S. Dept. Of Justice, Nat. Institute of Corrections, A Practitioner's Guide to Treating the Incarcerated Male Sex Offender xiii (1988)). Requiring offenders "to confront their past and

-11-

accept responsibility for their misconduct" is "an important component" to any rehabilitation program. Id. at 73.

> "Denial is generally regarded as a main impediment to successful therapy" and "[t]herapists depend on offenders' truthful descriptions of events leading to past offences in order to determine which behaviors need targeted in therapy."

McKune v. Lile, 536 U.S. at 33 (quoting H. Barbaree, Denial and Minimization Among Sex offenders: Assessment and Treatment Outcome, 3 Forum on Corrections Research, No. 4, p. 30 (1991)).

The Court reasoned that:

> The Kansas SATP represents a sensible approach to reducing the serious danger that repeat offenders pose to many innocent persons, most often children. The State's interest is undeniable. There is further no indication that the SATP is merely an elaborate ruse to skirt the protections of the privilege against compelled self-incrimination. Rather, the program allows prison administrators to provide to those who need treatment the incentive to seek it.

McKune v. Lile, at 48. Justice Kennedy, writing for the Court's plurality opinion rejected a penalty analysis and instead applied the "atypical and significant hardship" standard set forth in Sandin v. Conner, 515 U.S. 472 (1995) to determine that the SATP did not violate Lile's Fifth Amendment rights. Noting the purpose of the SATP and length of treatment, as well as the fact that no inmate had ever been charged or prosecuted for any offense based on information provided during treatment, the Court recognized that the SATP was not a "mere subterfuge for the conduct of a criminal investigation." McKune v. Lile, 536 U.S. at 34. The plurality noted that Lile's refusal to participate in the SATP "did not

extend his term of incarceration." Id. 39. Rather, Justice Kennedy characterized the consequences borne by Lile for his refusal to participate in the SATP as relinquishing "incentives" rather than an a "penalty" for his refusal to participate. Id. at 39. Consequently, the plurality found that the resultant removal of certain privileges did not rise to a level of unconstitutional compulsion to give rise to a Fifth Amendment claim. Id. at 41.

Justice O'Connor, writing a concurring opinion, rejected the application of the "atypical and significant hardship" Sandin standard and suggested a "broader" standard. McKune v. Lile, 536 U.S. at 48. Irrespective of the standard applied in the case at hand, Justice O'Connor found that the consequences suffered by Lile's refusal to participate in the SATP not "so great so as to constitute compulsion." Id.

Subsequent to McKune, the First Circuit in Ainsworth v. Stanley, 317 F.3d 1 (1st Cir. 2002), cert. denied 538 U.S 999 (2003), held that an optional New Hampshire's Department of Corrections' sexually offender program ("SOP") did not violate a prisoner's Fifth Amendment right against self-incrimination by requiring prisoners to disclose their sexual histories, despite the fact that the prisoners' refusal to participate in the SOP reduces the likelihood of parole. Id. at 6. The Ainsworth Court, noting the differing rationales employed by the Court in the McKune decision, applied the Turner rule, adopted by the Supreme Court in Turner v. Safley, 482 U.S. 78, 85 (1987). The Turner rule employs

a reasonableness standard for evaluating prison regulations that may infringe on an inmates' constitutional guarantees: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89. The Turner Court provided four factors in evaluating a regulation: (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates and the allocation of prison resources generally;[2] and, (4) whether the regulation represents an "exaggerated response" to prison concerns. See Turner, 482 U.S. at 89-91; Shaw v. Murphy, 532 U.S. 223, 229-30 (2001).

## V. Application of Law to Facts

At the outset the Court rejects Plaintiff's claims regarding the use of PPG assessments at the FCCC. There is no evidence in the record that Plaintiff was subjected to any penalty for refusing to submit to PPG assessments. Additionally, based on the evidence presented by the Liberty Defendants, the PPG assessment does not

---

[2] The Court must also consider the "ripple effect" of any accommodation. See Turner, 482 U.S. at 90 ("When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials.")

elicit any testimony whatsoever. Rather, the test is used "as a tool for guiding the focus of treatment." Liberty Defendants' Motion, Exhibit 6, FCCC Policy # F-22, Clinical Services, Phallometric Assessment, page 2. Thus, there is no evidence that the PPG assessment compels any testimony, yet alone self-incriminating testimony. United States v. Washington, 431 U.S. 181, 188 (1977). Moreover, the use of PPG assessments has been determined as "useful for treatment of sex offenders." U.S. v. Dotson, 324 F.3d 256, 261 (4th Cir. 2003); Glanzer v. Glanzer, 232 F.3d 1258, 166 (9th Cir. 2000). See also Berthiaume v. Caron, 142 F.3d 12, 17 (1st Cir. 1998) (acknowledging the use of PPG assessments in sex offender treatment as "an accepted tool" and "a standard practice."); Walrath v. United States, 830 F.Supp. 444 (N.D. Ill. 1993), aff'd, 35 F.3d 277 (7th Cir. 1994)(finding that PPG assessment treatments as a condition of parole is valid).

With respect to Plaintiff's claims regarding the history polygraph, it is clear that the purposes of the challenged testing is for treatment and rehabilitation and "is not aimed at gathering evidence to inculpate or exculpate" Plaintiff. " U.S. v. Dotson, 324 F.3d at 261. Indeed, the Court finds the Victim Questionnaire arguably too vague to prove the corpus delicti of a crime, especially since Plaintiff is permitted to use an alias, as opposed to the victim's actual name. See State v. Allen, 335 So. 2d 823, 825 (Fla. 1976)(corpus delicti usually requires the identity of the victim).

Regardless of whether the Court employs the "atypical and significant hardship" standard set forth in Sandin v. Conner, 515 U.S. 472 (1995) and adopted by the plurality in McKune v. Lile, 536 U.S. at 33; or applies Justice O'Connor's "broader" standard advocated in her concurring opinion, McKune at 48; or utilizes the Turner rule, adopted by the Supreme Court in Turner v. Safley, 482 U.S. 78, selected by the First Circuit in Ainsworth v. Stanley, 317 F.3d 1, the Court finds that the FCCC's policy requiring Plaintiff to submit to history polygraphs or suffer a lowering of his treatment level and loss of his FCCC job does not violate Plaintiff's Fifth Amendment or Due Process rights[3].

Unlike the Kansas SATP, the FCCC sexual offender treatment program is consensual. Nor does Plaintiff's refusal to submit to a history polygraph make him ineligible for an annual review or preclude him from petitioning for an evidentiary hearing. In fact, it is undisputed that, despite Plaintiff's refusal to submit to the testing, Plaintiff was able to successfully petition the trial court for an evidentiary hearing for release, requiring the state to prove by clear and convincing evidence that Plaintiff's mental

---

[3] The Court recognizes its obligation to construe the Supreme Court's holding in McKune to be the "position taken by those Members who concurred in the judgments on the narrowest grounds." Marks v. United States, 430 U.S. 188, 193 (1977)(citations omitted). The Tenth Circuit held on remand in Mckune that Justice O'Connor's narrower position in her concurrence represents the holding of the plurality decision. Lile v. McKune, 299 F.3d 1229, 1230 (10th Cir. 2002). The Ainsworth Court noting the lack of a "unifying theory" elected to "resort to its own sound judgment, so long as it does not conflict with existing precedent." 317 F.3d at 4.

condition required continued confinement. The consequences Plaintiff suffers from his failure to submit to a history polygraph are no more punitive than the consequence any resident suffers who fails to comply with other proscribed treatment modalities. In both instances, a resident's failure to comply with a proscribed treatment subjects him to a lowering of his treatment level. The Court does not find these consequences "so great so as to constitute compulsion." McKune v. Lile, 536 U.S. at 48. Rather, Plaintiff's reduction in his level of treatment is a consequence of his inability to progress in his treatment and is not an "atypical and significant hardship." Id. at 33.

   Furthermore, the Court "accords substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining a corrections system's legitimate goals and determining the most appropriate means to accomplish them." Overton v. Bazzetta, 539 U.S. 126 (2003); see also Bell v. Wolfish, 441 U.S. 520, 547 (1979). Hence, courts should defer to the judgment of prison officials given the "inordinately difficult undertaking" posed by modern prison administration. Turner v. Safley, 482 U.S. 78, 85 (1987). See also, Lawson v. Singletary, 85 F.3d 502, 510 (wherein the Eleventh Circuit recognized that management of prisons is complex and court's are ill-equipped to deal with such problems). This is particularly true where state penal facilities are involved.

Newman v. State of Alabama, 683 F.2d 1312 (11th Cir. 1982); Smith v. Sullivan, 611 F.2d 1039 (5th Cir. 1980).[4]

Here the FCCC, albeit not a penal facility, was created by the Florida Legislature as a secure facility to house persons determined to be a sexually violent predator "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large."  It is undeniable that the State's attempt at rehabilitation is legitimate and serves a valid governmental interest.  How to achieve such rehabilitation and whether to grant immunity for treatment required to assess the status and sincerity of Plaintiff's rehabilitation is properly "a policy choice that lies in the state's hands." Ainsworth, 317 F.3d 5.  See also United States v. Zinn, 321 F.3d 1984 (11th Cir. 2003)(upholding condition of supervised release that required defendant who was convicted of child pornography to submit to mental health treatment, including polygraph testing to ensure compliance with probationary terms as not generally violating the Fifth Amendment).

## VI. Conclusion

Here, the Court finds that use of history polygraphs and PPG assessments as part of the treatment program employed at the FCCC do not violate Plaintiff's Fifth Amendment or Due Process rights.

---

[4]   In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Consequently, the Court need not address the other issues raised by Defendant Venz or the Liberty Defendants in their respective dispositive motions. Any other claims not specifically addressed are found to be without merit.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. Plaintiff's Motion for Temporary Restraining Order (Doc. #1) previously deferred by the Court is **DENIED.**

2. Defendant Gregory Venz' Motion to Dismiss (Doc. #44) is **GRANTED.**  Defendants Robert Vaughn, Michael Lipscomb, and Adam Deming's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. #46) is **DENIED** as to the motion to dismiss and **GRANTED** as to the summary judgment in the alternative.

4. Defendant Robert Briody is dismissed for failure to execute service of process.

5. Plaintiff's Second Amended Complaint is dismissed.

6. The **Clerk of Court** shall (1) enter judgment in favor of the Defendants; (2) terminate any pending motions; and (3) close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __29th__ day of September, 2005.

SA: hmk
Copies: All Parties of Record

JOHN E. STEELE
United States District Judge